Ernest A. GREMILLION,
Plaintiff-Appellant,

v.

Jack CHIVATERO, et al.,
Defendants-Appellees.

No. 84–3121.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1985.

---

R. Travis Douglas, Kenner, La., for plaintiff-appellant.

John Volz, U.S. Atty., New Orleans, La., Robert A. Bernstein, Murray S. Horwitz, Glenn L. Archer, Jr., Michael L. Paup, Dept. of Justice, Tax Div., Washington, D.C., for defendants-appellees.

Before GOLDBERG, RUBIN and JOHNSON, Circuit Judges.

PER CURIAM:

An Internal Revenue Service (IRS) employee sued his immediate supervisor and other IRS administrators in federal district court for wrongful discharge from federal service in violation of his first and fifth amendment rights. Relying on *Bush v.*

Lucas,[1] the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted,[2] and for lack of jurisdiction over the defendants.[3] The district court dismissed the case on both grounds. Because we agree that *Bush v. Lucas* is controlling, we affirm the dismissal for failure to state a claim upon which relief can be granted and, therefore, do not address the personal jurisdiction issue.

I.

Ernest A. Gremillion, an IRS employee, sued his immediate supervisor and other IRS officials for wrongful discharge from federal service in violation of his first and fifth amendment rights. Gremillion's complaint states that Larry Hollingsworth, Gremillion's immediate supervisor and Group Manager of the Criminal Investigation Division, and Herbert Hinchman, Chief of the Criminal Investigation Division, conspired to have him removed from federal service because he objected to Hollingsworth's unfavorable evaluation of him. He further alleged that they conspired with Frank Helgert, a Review Office official, to prepare an "invalid" evaluation of one of Gremillion's criminal tax cases as the basis for his removal from federal service, and that Jack Chivatero, the District Director, recommended Gremillion's removal on the basis of his representative's recommendation without reviewing the file. All of these actions, according to Gremillion, were undertaken in "bad faith" and "were designed to punish [him] for exercising his right to free speech by questioning the authority and correctness of his supervisors."

II.

■ Although it is questionable whether the first amendment protects Gremillion for his intra-office speech criticizing his superiors,[4] even if we assume that it does,

1. 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

2. Fed.R.Civ.P. 12(b)(6).

3. Fed.R.Civ.P. 12(b)(2).

4. *See Connick v. Myers,* 461 U.S. 138, 154, 103 S.Ct. 1684, 1694, 75 L.Ed.2d 708, 724 (1983) (limited first amendment interest does not re-

Gremillion has failed to state a claim upon which relief can be granted in the light of the Supreme Court's recent decision in *Bush v. Lucas.*[5]

In *Bush,* the Supreme Court declined "to authorize a new nonstatutory damages remedy for federal employees whose first amendment rights are violated by their superiors."[6] It noted that federal courts must take account of any "special factors counseling hesitation"[7] before they create a *Bivens*[8] implied cause of action for the violation of any particular constitutional right: "Because such [federal employee] claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement the regulatory scheme with a new judicial remedy."[9]

As the Court made clear, its decision was not based upon "whether or not it would be good policy to permit a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his First Amendment rights."[10] Rather, the Court based its decision upon its conviction that "Congress is in a better position to decide whether or not the public interest would be served by creating [such a remedy]."[11]

*Bush* precludes judicial consideration of Gremillion's claim that his first amendment rights were violated. In fact, Gremillion's

administrative action for reinstatement and back pay was pending before the Merit Systems Protection Board at the time he filed this suit.

■ Gremillion also asserts that he was deprived of his property without just compensation in violation of the fifth amendment and that the defendants acted with malice and in bad faith. He thus seeks to bring his case within what he claims are exceptions to the holding of *Bush.*

In *Bush,* the Supreme Court recognized that the statutory scheme protecting federal employees from arbitrary personnel actions does not cover all personnel decisions and, thus, left open whether federal employees might have an implied cause of action for particular violations of their rights: "Not all personnel actions are covered by this system. . . . In addition, certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme."[12]

Gremillion first argues that "when" (not, if) he "is paid back pay for the time his [*sic*] has not been allowed to work, all of said back pay will be taxable to him in the year in which he receives it. Thus, his income taxes for that year will be increased by an amount in excess of $30,000." Second, he claims that his wife will be unable to take advantage of her employer's tax sheltered annuity plan because Gremillion's

quire supervisor "to tolerate action that he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships").

5. 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

6. *Id.* at ——, 103 S.Ct. at 2406, 76 L.Ed.2d at 650.

7. *Bush,* 462 U.S. at ——, 103 S.Ct. at 2411, 76 L.Ed.2d at 657.

8. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

9. *Id.* at ——, 103 S.Ct. at 2406, 76 L.Ed.2d at 650; see also *Hallock v. Moses,* 731 F.2d 754, 757

(11th Cir.1984); *Vest v. United States Dep't of Interior,* 729 F.2d 1284, 1286 (10th Cir.1984); *Carroll v. United States,* 721 F.2d 155, 156 (5th Cir.1983); *Broussard v. United States Postal Serv.,* 674 F.2d 1103, 1112–13 & n. 7 (5th Cir. 1982); *Dynes v. Army Air Force Exchange Serv.,* 720 F.2d 1495, 1498 (11th Cir.1983); *Gleason v. Malcom,* 718 F.2d 1044, 1047 (11th Cir.1983).

10. *Bush,* 462 U.S. at ——, 103 S.Ct. at 2417, 76 L.Ed.2d at 665.

11. *Id.* at ——, 103 S.Ct. at 2417, 76 L.Ed.2d at 665.

12. *Bush,* 462 U.S. at —— n. 28, 103 S.Ct. at 2415 n. 28, 76 L.Ed.2d at 662 n. 28.

wrongful discharge has resulted in a "substantial reduction" in the family's standard of living. Allegedly, her failure to participate in the annuity will result in "the loss of approximately $11,000.00 of annual benefits upon her retirement, payable over the remainder of her life."

These assertions do not, even if proved, establish even a colorable claim that there has been an uncompensated taking of property. They state merely the consequences incident to discharge from employment and of Gremillion's potential success on his claim for back pay. Indeed, in *Bush,* the petitioner was demoted and suffered a decrease of $9,716 in his annual salary.[13] Thus, when the Supreme Court left open the possibility that it might imply a cause of action for an uncompensated taking, it could not have intended a reduction in or the loss of salary, or the consequences incident thereto. The claim for back pay and other damages is merely part and parcel of the unlawful discharge claim, and Gremillion's exclusive remedy is supplied by the statutory scheme.

Even if Gremillion's fifth amendment claim were colorable or meritorious, however, the reasoning of *Bush* dictates that we should not create an implied cause of action. As the Eleventh Circuit noted when faced with a claim similar to Gremillion's:

> While *Bush* involved only a first amendment claim, as compared with ... multiple assertions of first, fourth, fifth, and sixth amendment violations, the Supreme Court's careful analysis applies with equal force to this case. The nature of Bush's constitutional injury played little

role in the court's reasoning. Rather, the Court focused on the "special factor," i.e., the federal employment relationship, in determining that there was no need for a new judicially created cause of action. This generally restrictive view of *Bivens*-type claims is emphasized by the fact that on the same day the court also held that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations.[14]

Gremillion also claims that his case differs from *Bush* because the defendants acted in bad faith and with malice by pursuing an earlier adverse action against him when they "knew that they could not prevail upon the reasons and specifications set out in their Proposed Adverse Action." Citing *Harlow v. Fitzgerald,*[15] Gremillion notes that a federal official is subject to suit if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with malicious intention* to cause a deprivation of constitutional rights or other injury."[16] From these premises, Gremillion would have us conclude that this case is not within the statutory definition of "personnel actions"[17] and, therefore, is not barred by *Bush.*

Gremillion's argument is erroneous for several reasons. In deciding *Harlow,* the Supreme Court explicitly noted that it was not addressing whether a private cause of action would be inferred and left consideration of that question for the district court.[18] The passage quoted by Gremillion speaks

---

**13.** *Bush,* 462 U.S. at ——, 103 S.Ct. at 2407, 76 L.Ed.2d at 652.

**14.** *Gleason v. Malcom,* 718 F.2d 1044, 1048 (11th Cir.1983) (citing *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) ); *see also Dynes v. Army Air Force Exchange Serv.,* 720 F.2d 1495, 1498 (11th Cir.1983) (rejecting invitation to create a *Bivens*-type remedy for the violation of a federal employee's due process rights).

**15.** 457 U.S. 800, 814, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396, 408 (1982).

**16.** *Id.* at 814, 102 S.Ct. at 2737, 73 L.Ed.2d at 408 (quoting *Wood v. Stricklund,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975) ) (emphasis in original).

**17.** *See supra* text accompanying note 12.

**18.** *See Harlow,* 457 U.S. at 805 n. 10 & 820 n. 36, 102 S.Ct. at 2732 n. 10 & 2740 n. 36, 73 L.Ed.2d at 402 n. 10 & 411 n. 36.

to whether federal officials are to be accorded qualified immunity, not to whether there is a *Bivens* implied cause of action in the circumstances present in this case.

Moreover, even if we assume that the defendants acted in bad faith,[19] the key question that we must address before we create an implied cause of action in these circumstances is whether "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective."[20]

Even if the Civil Service remedy were not viewed by Congress as an equally effective alternative, in *Bush* the court declined to create an implied cause of action:

[The question] is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition

of another remedy for violation of employees' First Amendment rights.[21]

*Bush* cautions us, therefore, that a plaintiff's claim for punitive damages,[22] or, in this case for acts undertaken in bad faith, is to be balanced against the deference due congressional judgment. Like the Court in *Bush*, "we do not decide whether or not it would be good policy to permit a federal employee to recover damages from his supervisor"[23] when he alleges that his supervisor has acted with malice and in bad faith. Even in light of such an allegation, "we decline 'to create a new substantive legal liability without legislative aid and as at common law' ... because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it."[24]

For these reasons, the judgment of the district court is AFFIRMED.

---

**19.** Without such an assumption, Gremillion's case falls either to the Scylla of *Bush* or the Charybdus of *Bishop v. Wood,* 426 U.S. 341, 350–51, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684, 693–94 (1976) (footnote omitted):

The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

**20.** *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15, 23–24 (1980) (emphasis in original); *see also Davis v. Passman,* 442 U.S. 228, 245–47, 99 S.Ct. 2264, 2277–78, 60 L.Ed.2d 846, 862–64 (1979); *Bush,* 462 U.S. at ——, 103 S.Ct. at 2408, 76 L.Ed.2d at 653.

**21.** *Bush,* 462 U.S. at ——, 103 S.Ct. at 2416, 76 L.Ed.2d at 664.

**22.** *Id.* at —— n. 8, 103 S.Ct. at 2408 n. 8, 76 L.Ed.2d at 654 n. 8.

**23.** *Id.* at ——, 103 S.Ct. at 2417, 76 L.Ed.2d at 665.

**24.** *Id.* at ——, 103 S.Ct. at 2417, 76 L.Ed.2d at 664 (quoting *United States v. Standard Oil Co.,* 332 U.S. 301, 302, 67 S.Ct. 1604, 1605, 91 L.Ed. 2067, 2068 (1947); *see Gleason v. Malcom,* 718 F.2d 1044, 1048 & n. 5 (11th Cir.1983) (rejecting plaintiff's claim that the court should imply a cause of action because there was no adequate alternative remedy by which she could obtain punitive damages).