**Carolyn King PALERMO,
Plaintiff-Appellant,**

v.

**Dewayne ROREX, Jack Chivatero and
Charles Hoyle, Defendants-Appellees.**

No. 85–3127.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1987.

Rehearing and Rehearing En Banc
Denied Feb. 17, 1987.

---

Frank A. Silvestri, New Orleans, La., for plaintiff-appellant.

Murray S. Horwitz, John Volz, Asst. U.S. Atty., Washington, D.C., Gregory C. Weiss, Asst. U.S. Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., New Orleans, La., Michael Paup, Chief Appellate Sec., U.S. Dept. of Justice, Tax Div., Jonathan S. Cohen, Washington, D.C., for defendants-appellees.

Before RANDALL and WILLIAMS, Circuit Judges and HINOJOSA,* District Judge.

HINOJOSA, District Judge:

## FACTS AND PROCEEDINGS BELOW

Appellant Carolyn King Palermo (Plaintiff below, hereinafter Appellant) brought two separate actions seeking monetary damages against Appellees Dewayne Rorex, Jack Chivatero and Charles Hoyle (Defendants below, hereinafter Appellees or Rorex, Chivatero, or Hoyle, respectively if referred to individually). Appellees are all employees of the Internal Revenue Service, an agency of the federal government (hereinafter IRS). One action was brought in the Civil District Court for the Parish of Orleans, State of Louisiana and the other in the Federal District Court for the Eastern District of Louisiana. The state court action was removed to the federal district court and consolidated with the federal action.

The thrust of Appellant's Complaints, which are virtually identical in both suits, is that the Appellees who were her husband Dwayne Joseph Palermo's (hereinafter Mr. Palermo) supervisors in the IRS wrongfully commenced disciplinary proceedings against Mr. Palermo with the intention of inflicting mental and emotional distress on him, and that such actions caused or contributed to Mr. Palermo's committing suicide. The state court action alleged such conduct was tortious, while the federal court action alleged such conduct constituted cruel and unusual punishment and violated Mr. Palermo's due process rights. The district court denied the Appellant's Motion to Remand the common law tort suit to the state court and granted the Appellees' Motion to Dismiss the Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action. The facts as alleged in Appellant's Complaints are as stated below.

In February, 1980, Mr. Palermo, an employee of the IRS, was told by Rorex that he was being "rotated" to a different position, for the limited period of twelve months, for administrative purposes. Mr. Palermo understood that he would be permitted to return to his original position. However, he was never "rotated" back to his previous position.

Apparently Mr. Palermo as a result of the transfer and other job related pressures developed emotional and psychological problems and suffered a nervous breakdown and was hospitalized in January 1983.

Rorex brought disciplinary action against Mr. Palermo in April 1983, for conduct related to his breakdown and in the same month Mr. Palermo was again hospitalized for his emotional problems. Although Mr. Palermo's psychiatrist advised Rorex and his supervisors of the seriousness of Mr. Palermo's mental illness, Rorex informed Mr. Palermo that he would be subject to disciplinary action if he attempted to return to work.

Mr. Palermo sought disability retirement on July 2, 1983, but was denied disability in August of that year. As a result of the denial of disability, Mr. Palermo returned to work. Upon his return to work, Rorex, Chivatero and Hoyle reinstated disciplinary actions against him. As a part of the disciplinary action, Mr. Palermo was subject to a downgrade of his position with the IRS. Although he sought to take a voluntary downgrade, Mr. Palermo was not permitted to do so and was instead given a disciplinary downgrade. Mr. Palermo committed suicide on October 3, 1983.

On the above alleged facts Appellant stated in her federal Complaint that such action by the Appellees constituted cruel and unusual punishment, violated due process, and constituted malicious administrative prosecution, while in the state court action she alleged that said actions resulted in the "wrongful death" of her husband. In each Complaint she sought monetary damages ($2 million in the state court and $6 million in the federal action).

* District Judge of the Southern District of Texas, sitting by designation.

This proceeding is one in which Appellant appeals the district court's actions denying her Motion to Remand the state court action and the granting of the Motion to Dismiss the Complaints for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

I

■ Appellant argues that the district court erred in denying her Motion to Remand on the grounds that the state court action should not have been removed without certification from the Attorney General that the Appellees were acting within the scope of their employment pursuant to 28 U.S.C. § 2679(d). Appellant further argues that no such certification could have been made because the acts alleged in the petition were malicious and so could not be within the scope of Appellees' employment with the federal government.

Appellees assert that removal was proper pursuant to 28 U.S.C. § 1442 in that the Defendants were all employees of the IRS, an agency of the federal government. Appellees relied upon the allegations in the Complaints to show that the acts complained of were within the scope of their employment.

Appellant's argument that 28 U.S.C. § 2679(d) controls is incorrect. Said section deals with the removal of actions brought against federal employees pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 1346 and 2671, et seq.; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3727, p. 452 (1985). Since this action was not brought under the Federal Tort Claims Act removal was properly considered under the more general removal statute for federal officers, 28 U.S.C. § 1442.

The Supreme Court of the United States has interpreted Title 28 Section 1442, in *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). In holding that removal by the Warden and chief medical officer at a federal penitentiary was proper under this statute, the Court stated:

... the right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act "under color" of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a 'federal interest in the matter' ..., the very basic interest in the enforcement of federal law through federal officials. *Id.* at 395 U.S. 406, 89 S.Ct. at 1815 (citation omitted).

Professors Wright, Miller and Cooper noted that, in *Willingham*, "[i]t was sufficient that the acts charged occurred in the course of a continuing relationship between the plaintiff and the federal officer during the latter's performance of his duties...." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3727, pp. 450–451 (1985).

In the instant case, there can be no doubt that the acts alleged in the Complaints were performed "under color of federal office." The state court Complaint specifically alleges that the actions complained of were connected with Mr. Palermo's status as an employee of the IRS.

The acts alleged include the imposition of disciplinary actions against Mr. Palermo by Rorex, failing to assist Mr. Palermo by means of employee counseling, denying him access to the Troubled Employee Program, and failing to assist him in seeking agency disability. Each act alleged confirms the "continuing relationship" that Plaintiff and Defendant Rorex had at the IRS. The Complaint further alleged that "Mr. Rorex acted upon the authority consent and approval of defendants Jack Chivatero and Charles Hoyle, his supervisors." The words "authority," "consent," and "approval" themselves confirm the assertion that all acts were sanctioned by the IRS. The "under color" test could not be more clearly satisfied.

Appellant also claims that, because the Appellees are sued in their individual rather than official capacities and the acts are alleged to have been maliciously motivated, the Defendants could not have been acting

"under color of federal office." A similar argument was rejected in *Willingham, supra*. In discussing the need for a " 'causal connection' between the charged conduct and asserted official authority," *Id.* at 409, 89 S.Ct. at 1817, the Court found that it is sufficient that the only contact between the parties was while at their place of federal employment, while performing their duties. The Court went on to explain:

> If the question raised is whether they [the appellees] were engaged in some kind of "frolic on their own" in relation to respondent [appellant], then they should have the opportunity to present their version of the facts to a federal, not a state court. This is exactly what the removal statute was designed to accomplish. *Id.,* 409, 89 S.Ct. at 1817.

Based upon this Court's application of the *Willingham* test, we find that the state action was properly removed pursuant to Section 1442(a)(1) and the district court was correct in denying the Motion to Remand.

## II

Appellant's more substantive, if not well founded, argument is that the District Court erred in granting Appellees' Motion to Dismiss the Complaints for failure to state a claim for which relief can be granted. As stated the state Complaint asserted the common law tort claims of intentional infliction of emotional distress and gross negligence in Appellees' conduct as Mr. Palermo's supervisors resulting in Mr. Palermo's "wrongful death" while the federal Complaint alleged the same actions but asserted constitutional violations of the Fifth Amendment protection against deprivation of life, liberty or property without due process of law and the Eighth Amendment protection against cruel and unusual punishment.

■ For purposes of review of a dismissal for failure to state a claim for which relief may be granted, Appellant's allegations must be taken as true. *Miller v. Stanmore,* 636 F.2d 986 (5th Cir.1981); *see Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (allegations

"construed favorably to pleader"); Committee Notes, 1946 Amendment (1985); Wright & Miller, *Federal Practice and Procedure: Civil* § 1357, fn. 46 (1969).

■ Assuming, as we must, that Appellant's constitutional allegations are correct, she has still stated no claim for which relief could be granted. Appellant's Fifth Amendment due process claim is apparently based upon the "taking" of Mr. Palermo's life without due process of law. Although this claim would be difficult to prove, we accept, for purposes of this appeal, that the actions taken by the Appellees caused Mr. Palermo to take his own life. The question thus becomes whether this Court should fashion a remedy for this wrong.

The Court is mindful that there was an extensive grievance procedure established by the Office of Personnel Management, available to Mr. Palermo to assert his Complaints. 5 C.F.R. §§ 771.201–771.304. As the Supreme Court pointed out in *Bush v. Lucas,* 462 U.S. 367, 386, 103 S.Ct. 2404, 2415, 76 L.Ed.2d 648 (1983), "constitutional challenges to agency action ... are fully cognizable within this system [now, Office of Personnel Management's grievance provisions]." Mr. Palermo could have raised his claims in an administrative procedure.

The Supreme Court has determined that the Constitution itself may be the sole basis for a private cause of action against a federal official. *Bivens v. Six Unknown Fed. Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, in *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1979), the Supreme Court noted that a *Bivens* cause of action could be defeated where:

> the defendants demonstrate special factors counselling hesitation in the absence of affirmative action by Congress, [or]

> when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective. (citing *Bivens, supra,* at 396–399 [91

S.Ct. at 2004–06] and *Davis v. Passman*, 442 U.S. 228, 245–247 [99 S.Ct. 2264, 2277–78, 60 L.Ed.2d 846] (1979))

The Court applied these possible exceptions to a *Bivens* action in *Bush v. Lucas, supra.*

As in the instant action, *Bush* was one in which a federal employee complained of a violation of his constitutional rights [1] by his supervisor. The *Bush* Court rephrased the question which *Bivens* and *Carlson,* first addressed as follows:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. *Bush v. Lucas*, 462 U.S. 367, 388 [103 S.Ct. 2404, 2416, 76 L.Ed.2d 648] (1983).

The Court went on to answer that question in the negative. The Supreme Court found that the special nature of the federal employer-employee relationship constitutes a "special factor counselling hesitation" in formulating additional constitutional remedies.

This Circuit has applied the holding in *Bush* to a case very similar to the instant one. In *Gremillion v. Chivatero*, 749 F.2d 276 (5th Cir.1985), an IRS employee sued for First and Fifth Amendment violations, claiming he was unlawfully discharged for exercising his right of free speech. Like Appellant's argument here, the appellant in *Gremillion* attempted to distinguish *Bush* on the grounds that the test should be different where malicious or intentional acts are alleged. This argument was explicitly rejected in *Gremillion*.

The issue in Appellant's case is not whether the acts were malicious but rather, even assuming a violation of the employee's constitutional rights, whether the Court should supplement the available administrative remedies with the creation of a remedy based upon the constitutional violation at issue. In this highly regulated area of federal employment, where Congress has created exhaustive administrative avenues for employee disputes, there are those very strong "special factors counselling hesitation" preventing us from creating a *Bivens*-type constitutional remedy for violations of employees constitutional rights arising in and from the employment context.

Appellant argues that a different result should obtain where the administrative remedies available will not allow complete recovery. This argument was rejected in *Bush* and *Carlson*. Although both petitioners in those decisions argued the inadequacy of the available remedies, the Supreme Court twice considered only the test as established in *Bivens, supra,* and *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). As these cases so clearly indicate, such factors are more properly considered by Congress in furtherance of "federal personnel policy," than by the Courts. *Bush v. Lucas, supra,* 467 U.S. at 380–81, 103 S.Ct. at 2412–13.

The analysis of "special factors counselling hesitation" could also be applied to Appellant's Eighth Amendment claim. However, Appellant's Eighth Amendment claim is so patently frivolous, we need not here consider whether such special factors exist. The cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions, following a conviction. *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir.1984). There are

---

1. The claim in *Bush* was one for the imposition of disciplinary action for the federal employee's exercise of his First Amendment right to free speech. Appellant tried to distinguish *Bush* on the basis of the nature of the constitutional tort alleged. For purposes of this decision, this Court can find no reason the constitutional violation alleged should alter the sound guidance provided in *Bush*. This Court, in *Gremillion v. Chivatero*, 749 F.2d 276 (5th Cir.1985), applied the same reasoning in *Bush* to a Fifth Amendment claim for a taking of property, citing an Eleventh Circuit opinion, *Gleason v. Malcom*, 718 F.2d 1044 (11th Cir.1983), for the proposition that the constitutional basis for the violation is immaterial to these actions.

no allegations in either the state or federal Complaints which, even when read in Appellant's favor as generously as is feasible could possibly support an Eighth Amendment claim. The case was not a criminal case and Mr. Palermo was not convicted of a crime.

Having concluded that Appellant's constitutional claims should have been dismissed, the final question is whether Appellant stated a common law tort claim for which relief could be granted. The district court found that all actions alleged in the Complaint were within the scope of Appellees' employment as Mr. Palermo's supervisors and thus were shielded from liability for common law torts.

The Supreme Court has established that federal officials are absolutely immune for common law torts taken "within the outer perimeter of petitioner's line of duty ...," *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). The fact that appellant had alleged malice is of no consequence:

> The claim of an unworthy purpose does not destroy the privilege.... The privilege would be of little value if they [federal officials] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. *Barr v. Matteo*, 360 U.S. at 575, 79 S.Ct. at 1341 (citing *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)).

Appellant relies upon an opinion of this Circuit interpreting the limits of absolute immunity for federal officials in actions involving battery. In *Dretar v. Smith*, 752 F.2d 1015 (5th Cir.1985) this Court held that:

> [t]he individual citizen's interest to be protected from physical force by federal official outweighs the public's interest in shielding government officials from defending damage suits brought on account of action taken in exercise of their official responsibilities when the battery by the federal official 'cause[s] severe injuries, [is] grossly disproportionate to the need for action under the circumstances, and [is] inspired by malice.' *Id* at 1017 (quoting *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981)).

Appellant attempts to bring the actions alleged in her Complaints within this very narrowly defined exemption from absolute immunity.

This Court declines to read *Dretar* to apply not only to a very strictly limited class of actual, physical batteries as defined in that case but also to less tangible intentional inflictions of emotional distress. To open the floodgates to actions by every public employee for emotional distress for every administrative action taken by a federal official would surely contradict the reasoning in *Barr* wherein the Court weighed two countervailing interests as follows:

> ... on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities. *Barr v. Matteo*, 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434.

The Court in *Barr* clearly felt that the balance should be struck in favor of the public interest in an effective government, with its officials free from threats of suits for actions within the scope of their employment.

■ The question thus becomes whether the actions taken by Appellees were within "the outer perimeter of the scope of their employment." The allegations in Appellant's Complaints, if taken as true, show only that Rorex, with the knowledge and approval of his supervisors, Chivatero and Hoyle, imposed one transfer for administrative purposes, various disciplinary actions or threatened actions, and failed to

enroll Mr. Palermo in a Troubled Employee Program. Every one of these actions, or inactions, were a direct result of Appellees' supervisory roles over Mr. Palermo. Few actions could be closer to the center of the scope of Appellees' employment as supervisors, and certainly do not begin to test the perimeters.

Appellant argues that this Circuit should adopt the holdings of the Courts of Appeals for the District of Columbia, in *McKinney v. Whitfield*, 736 F.2d 766 (D.C.Cir.1984), and the Third Circuit, in *Araujo v. Welch*, 742 F.2d 802 (3rd Cir.1984). Appellant's reliance upon these cases is misplaced for several reasons. This Court has already rejected the holdings in both *McKinney* and *Araujo* in *Dretar, supra* by stating:

> We cannot accept the *Araujo* and *McKinney* courts' reasoning or conclusion that the absolute immunity does not extend to *any* battery committed by a federal desk employee because we believe that the *Araujo* and *McKinney* courts misapprehended the nature of the considerations at stake in absolute immunity cases. *Dretar*, 752 F.2d at 1018.

As the Court pointed out *Araujo* and *McKinney* focused on the nature of the tort alleged, rather than the overall conduct of the federal employee as is counselled in *Barr*. In addition, the *Araujo* and *McKinney* opinions give short shrift to the considerations outlined in *Barr* with respect to protecting government officials and the great interest of Congress and the Executive in what has been termed "federal personnel policy." *Dretar* at 1018. *See Bush v. Lucas, supra*, 467 U.S. at 380–81, 103 S.Ct. at 2412–13.

All actions alleged by Appellant are clearly within the boundaries of the scope of Appellees' employment with the federal government. Appellees are entitled to absolute immunity for all common law torts within the scope of their employment.

Therefore, Appellant has failed to state either constitutional or common law tort claims for which relief could be granted and the District Court was correct in dis-missing the Complaint for failure to state a cause of action.

The district court's denial of Appellant's Motion to Remand and dismissal of Appellant's Complaints are AFFIRMED.