# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 29, 2014

No. 13-30155

Lyle W. Cayce
Clerk

TAMMY BELMON BELL,

Plaintiff–Appellant

v.

JON C. THORNBURG,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Louisiana

ON PETITION FOR REHEARING

(Opinion December 30, 2013, No. 13-30155, – F.3d —)

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Tammy Belmon Bell's petition for rehearing is DENIED. Defendant-Appellee Jon C. Thornburg's petition for rehearing to clarify opinion is GRANTED.

The opinion, No. 13-30155, – F.3d —, is hereby WITHDRAWN, and the attached substitute opinion is ISSUED in its place.

No. 13-30155

EDWARD C. PRADO, Circuit Judge:

Tammy Belmon Bell ("Bell"), a former employee of Jon C. Thornburg ("Thornburg"), the standing bankruptcy trustee for the Western District of Louisiana, filed suit in state court alleging that she had been terminated because of her race in violation of the Louisiana Employment Discrimination Law ("LEDL"), Louisiana Revised Statutes §§ 23:301–03, 23:323. Thornburg removed Bell's suit to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Bell moved to have the case remanded to state court, while Thornburg moved for summary judgment. The district court determined that removal was proper, and that Thornburg should be granted summary judgment because he did not qualify as an "employer" under the LEDL. Bell appeals both determinations. Because removal was proper and Thornburg does not qualify as an employer under the LEDL, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

The record is almost entirely devoid of any statements, affidavits, or other evidence. The following facts are taken exclusively from the pleadings in Bell's state-court petition. *See generally Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) ("Limiting the removal jurisdiction question to the claims in the state court complaint . . . permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.").

Bell, an African-American woman, was employed in the office of the Chapter 13 standing trustee for the Western District of Louisiana for fourteen years, most recently as its office manager. In 2008, Thornburg began serving as the standing trustee for Chapter 13 bankruptcies in the Western District of Louisiana. Bell claims that she and Thornburg disagreed frequently, and the quality of her work life deteriorated after Thornburg's arrival. In October 2010,

No. 13-30155

Bell was required to submit to a "peer review," which three trustees from the National Organization of Chapter 13 Trustees administered. Two of the trustees interviewed Bell, while a third sought input from the local bankruptcy judge. Based in part on statements by the bankruptcy judge that he disliked Bell, the peer review panel suggested to Thornburg that Bell be fired. Thornburg disagreed, but nonetheless believed Bell should be given a different position. Bell remained on the office's payroll while Thornburg looked for another position for her in the office, but problems between Thornburg and Bell persisted, and Thornburg ultimately terminated Bell on April 4, 2011. She was replaced by a white woman, who Bell contends was less qualified.

## B.    Procedural Background

On March 6, 2012, Bell sued Thornburg in Louisiana state court, alleging that she had been terminated because of her race in violation of the LEDL. Thornburg removed to federal district court in the Western District of Louisiana on the theory that, as a standing trustee, he was a person acting under an officer of the United States and thus entitled to remove the suit under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). After the removal order was granted, Thornburg moved for summary judgment, arguing that he had not employed twenty or more employees for twenty or more weeks, as is required to qualify as an "employer" under the LEDL, Louisiana Revised Statute § 23:302(2). Bell, meanwhile, moved to have the case remanded to state court, arguing that Thornburg was a private citizen not covered by the federal officer removal statute.

The magistrate judge assigned to the case found that this Court's decision in *Cromelin v. United States*, 177 F.2d 275 (5th Cir. 1949), precluded the application of § 1442(a)(1) to Thornburg. *Cromelin* considered whether the Federal Tort Claims Act applied to bankruptcy trustees and held that a "trustee, like a receiver, is an officer of [the] court, appointed by the court, directed by the

court, and paid by the court from the funds in the court. He is in no sense an agent or employee or officer of the United States." 177 F.2d at 277. Therefore Thornburg, the magistrate judge reasoned, could not invoke §1442(a)(1), which by its terms applies only to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof." The magistrate judge also noted, however, that regardless of whether § 1442(a)(1) applied to Thornburg, removal under any part of § 1442 carries with it the additional requirement that the mover assert "a colorable claim of federal immunity or other federal defense." *See Mesa v. California,* 489 U.S. 121, 124, 129 (1989). Because Thornburg had provided nothing more than the conclusory statement in his notice of removal that "he has a valid and colorable federal defense to all claims made," the magistrate judge determined that removal had been improper and recommended remanding the case to state court.

The district court disagreed with the magistrate judge's conclusion that removal was improper. The court clarified that even if § 1442(a)(1) covers only officers of the United States and those "acting under" them, § 1442(a)(3) provides the same removal privileges to officers of the courts of the United States. *See* 28 U.S.C. § 1442(a)(3) (offering the federal officer removal privilege to "[a]ny officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties"). Thornburg, who, according to the district court, was an officer of the courts, was thus free to remove under the statute. With respect to the magistrate judge's determination that Thornburg had failed to meet the requirement that he aver a federal defense, the court relied on Bell's allegation in her state-court petition that Thornburg "used the 'peer review' as the reason for his alleged discriminatory actions leading to Plaintiff's termination." The court concluded that because the peer review purportedly

4

involved the presiding bankruptcy judge, Thornburg had sufficiently averred a colorable federal defense, and it denied Bell's remand request.[1]

The district court then turned to Thornburg's motion for summary judgment. The court agreed with Thornburg that because he had not employed more than twenty people during twenty or more weeks in the last year, he could not be considered an employer under the LEDL. The court thus concluded that the LEDL did not apply to Thornburg, and granted his summary judgment motion. Bell timely appealed.

## II.  DISCUSSION

### A.    Standard of Review

This Court reviews the denial of a motion to remand de novo. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 722 (5th Cir. 2002). The Court also reviews a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Pierce v. Dep't of the U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted).

### B.    Whether the District Court Properly Exercised Jurisdiction over Bell's Suit Against Thornburg

The federal officer removal statute, 28 U.S.C. § 1442, creates an exception to the well-pleaded complaint rule. The statute states, in relevant part:

---

[1] We note that in his opposition to Bell's motion to remand, and in his objections to the magistrate judge's report and recommendation, Thornburg did not agree with any of Bell's factual allegations. Instead, he argued only that his acts (as portrayed by Bell) must be understood as having been "performed in his official capacity as Chapter 13 Trustee," and arising out of "[Bell's] status as an employee with the Chapter 13 Trustee office."

No. 13-30155

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. . . .

> (3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties . . . .

28 U.S.C. § 1442. Thus, to invoke the federal officer removal statute, Thornburg must both act under an officer of the United States and have averred a colorable federal defense. *See Mesa,* 489 U.S. 133–34. We address each of these requirements in turn.

    1.    *Whether Thornburg "act[s] under" an officer of the United States such that removal under the federal officer removal statute is available to him*

Bell argues that this Court should remand her claim to state court because, based on this Court's decision in *Cromelin*, Thornburg cannot take advantage of the federal officer removal statute and remove the case under § 1442(a)(1). *See Cromelin*, 177 F.2d at 277 (holding that a bankruptcy trustee is "an officer of [the] court, appointed by the court, directed by the court, and paid by the court" but "is in no sense an agent or employee or officer of the United States"). Thornburg, however, claims that he is entitled to removal under § 1442 because he acts under and closely with the United States Trustee.

6

No. 13-30155

We hold that Thornburg is a "person acting under" an officer of the United States who may invoke § 1442(a)(1) of the federal officer removal statute. While Bell cites *Cromelin* for support, she fails to acknowledge that it was decided in 1949, before the Bankruptcy Reform Act of 1978 changed the way the bankruptcy trustee system was administered. Thus, *Cromelin* does not control our decision here. *See* United States Trustee Program Policies and Practices Manual, vol. 1, ch. 1-4.1 (Oct. 2011), *available at* http://www.justice.gov/ust/eo/ust_org/ustp_manual/docs/Volume_1_Overview.pdf (hereinafter "Trustee Manual"). Due in part to concern that the courts would not fairly adjudicate the rights of debtors, creditors, and third parties, the Bankruptcy Reform Act removed the authority to perform many administrative duties from the courts and instead concentrated them under a new position in the Department of Justice—specifically, the U.S. Trustee. *See id.* The U.S. Trustee's administrative duties include appointing Chapter 13 standing trustees. 28 U.S.C. § 586(b); Trustee Manual, Chapter 1-4.3. But, the Bankruptcy Reform Act of 1978 also means that the district court's conclusion that Thornburg could invoke § 1442(a)(3) was based on an inaccurate assumption, because the U.S. Trustee is an officer of the Department of Justice, not of the court.

In concluding that Thornburg meets the "acting under" requirement, we rely on *Watson v. Philip Morris Cos.,* 551 U.S. 142 (2007), the Supreme Court's most recent elaboration on this requirement. In *Watson*, the Court considered whether the Federal Trade Commission's close supervision of Philip Morris's activities meant the company was "acting under an officer of the United States." *Id.* at 145 (emphasis and internal quotation marks omitted). Although the Court held that § 1442(a)(1) was unavailable to Philip Morris, *id.*, it reiterated previous decisions' guidance that the statute be "liberally construed," *id.* at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). The Court explained that § 1442(a)(1) may apply "to private persons 'who lawfully assist' [a] federal officer

'in the performance of his official duty,'" *id.* at 151 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)), or to private parties who "were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law,'" *id.* (alterations in original) (quoting *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966)). The Court made clear that "simply complying with the law" is not sufficient; "'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152 (emphases omitted).

Though Bell argues that Chapter 13 standing trustees are private citizens, *Watson* makes clear that this fact alone does not bar the use of § 1442(a)(1). *See* 551 U.S. at 151. Chapter 13 standing trustees like Thornburg are appointed pursuant to federal law by the U.S. Trustee for the purpose of assisting the U.S. Trustee with especially heavy Chapter 13 bankruptcy caseloads. *See* 28 U.S.C. § 586(b); 28 C.F.R. § 58.2. The U.S. Trustee supervises the standing trustee, who is tasked with carrying out the provisions of the Bankruptcy Code. 28 U.S.C. § 586(b). Unlike Philip Morris in *Watson*, standing trustees receive delegated authority; they do not merely comply with the law. They both "assist" and "carry out" the duties and tasks of their federal superiors. Thus, we conclude that Thornburg "act[s] under" officers of the United States and fall within § 1442(a)(1)'s purview.

*2. Whether Thornburg has averred "a colorable federal defense"*

Bell also claims that Thornburg is not entitled to invoke the federal officer removal statute because he has failed to aver a colorable federal defense and failed to provide any evidence to establish a federal defense. Thornburg counters that, because his employment actions relative to Bell were conducted under the color of office and while performing his official duties, he has averred a colorable federal defense and was entitled to remove this case under the federal officer removal statute. He points this Court to two earlier decisions, *Willingham v.*

*Morgan*, 395 U.S. 402 (1969) and *Palermo v. Rorex*, 806 F.2d 1266 (5th Cir. 1987), to support his arguments.

The Supreme Court has made clear that "all the various incarnations of the federal officer removal statute . . . require the averment of a federal defense." *Mesa*, 489 U.S. at 133–34. But, the officer seeking removal need not "win his case [by proving his federal defense] before he can have it removed." *Willingham*, 395 U.S. at 407. He must only allege "a causal connection between what the officer has done under asserted official authority and the state [action]," *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)); *see also Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law.").

In *Willingham*, the Supreme Court considered whether the bare assertion of federal qualified immunity sufficed to allow removal under § 1442(a)(1). *See* 395 U.S. at 406–08. The case involved a state claim by a prisoner in a federal penitentiary that prison officials had assaulted him. *Id.* at 403. The prison officials removed, stating that anything they may have done to the prisoner was "in the course of their duties as officers of the United States of America . . . and under color of such offices." *Id.* On the issue of how strong the evidentiary showing of immunity had to be to obtain removal, the Court stated, "One of the primary purposes of the removal statute . . . was to have [colorable defenses arising out of federal officers' duty to enforce federal law] litigated in the federal courts." *Id.* at 407. "In fact," the Court went on, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." *Id.*

No. 13-30155

Having settled the question of whether an officer need prove, rather than merely assert, a federal defense, the Court proceeded to discuss the distinct issue of whether the record in the case would support a finding that the suit involved "conduct under color of office, and that it [was], therefore, removable." *Id.* It observed that, in a civil suit of the type at issue in *Willingham*, "it was sufficient for petitioners to have shown that their relationship to [a] respondent derived solely from their official duties." *Id.* at 409. The Court found that the prison officials had made the requisite showing by asserting that "their only contact with respondent occurred inside the penitentiary, while they were performing their duties." *Id.* It was enough that the prison officials were "on duty, at their place of federal employment, at all the relevant times. If the question raised is whether they were engaged in some kind of 'frolic of their own' . . . they should have the opportunity to present their version of the facts to a federal, not a state, court." *Id.*

We hold that Thornburg has averred a colorable federal defense. He has alleged that his "employment actions relative to [Bell] were performed under the color of his office, in the performance of his duties thereunder, after input from the peer review process, and involving communication with and involvement of the United States Trustee and a United States bankruptcy judge."[2] This kind of assertion compares favorably to that found sufficient in *Willingham*, where the prison officials in affidavits declared that "the only contact [they] had with respondent was inside the walls of the United States Penitentiary . . . in performance of [their] official duties." 395 U.S. at 407–08 (internal quotation mark omitted).

---

[2] We understand Thornburg to mean only that the facts alleged in Bell's pleadings implicate the involvement of the United States Trustee and a United States bankruptcy judge, not that Thornburg accepts those allegations as true. *See Palermo*, 806 F.2d at 1269 ("Appellees relied upon the allegations in the Complaints to show that the acts complained of were within the scope of their employment.").

No. 13-30155

Our decision in *Palermo* also bolsters our conclusion that Thornburg has averred a colorable federal defense. *Palermo* involved a state law wrongful death claim stemming from the workplace harassment of an IRS employee who ultimately committed suicide. 806 F.2d at 1268. We held that because the "state court Complaint specifically alleges that the actions complained of were connected with [the deceased's] status as an employee of the IRS," and the defendants acted "upon the authority[,] consent and approval of [their] supervisors," "there [could] be no doubt that the acts alleged in the Complaint[] were performed 'under color of federal office.'" *Id.* at 1269. The fact that the IRS employees were sued in their individual capacities for acts that were allegedly maliciously motivated was immaterial because the employees were entitled to present their version of the facts in a federal court. *See id.* at 1269–70 (applying *Willingham*). Here, as in *Palermo*, the only claims Bell makes stem from employment actions performed in the course of the administration of Thornburg's federal duties. Thus, under *Willingham* and *Palermo*, and considering the Supreme Court's guidance that § 1442(a)(1) "must be 'liberally construed,'" we hold that Thornburg has averred a colorable federal defense and was entitled to remove this case under the federal officer removal statute. *See Watson*, 551 U.S. at 147.

## C.    Whether Thornburg is Entitled to Summary Judgment Because He Does Not Qualify As An Employer Under the LEDL

Having determined that removal was proper in this case, we now address whether Thornburg qualifies as an employer under the LEDL. The statute defines an employer as:

> a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter *shall apply only* to an employer who employs twenty or more employees within this state for each working day in each of

11

twenty or more calendar weeks in the current or preceding calendar
year.

La. Rev. Stat. Ann. § 23:302(2) (emphasis added).

Bell does not dispute that Thornburg has not employed the requisite number of people to qualify as an employer.  Instead she argues that Thornburg should be considered part of the larger "association" of "the Chapter 13 system," which she alleges employs more than 125 people in the state.  We need not credit this assertion because Bell provides no evidence for it.  *See* Fed. R. Civ. P. 56(c)(1).  But, even if we were to credit Bell's claim about the number of people employed within "the Chapter 13 system" in the state, Thornberg would still not meet the LEDL's definition of employer.  Nothing Bell claims bears on whether Thornburg himself employed a sufficient number of people to be held liable under the LEDL.  Thus, we hold summary judgment was proper because Thornburg does not qualify as an employer under the LEDL.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.