Richard E. DYNES, Plaintiff-Appellant,

v.

**ARMY AIR FORCE EXCHANGE SERVICE, Defendant-Appellee.**

No. 83–7111
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Oct. 24, 1983.

Harold Howell, Howell, Sarto & Howell, Prattville, Ala., for plaintiff-appellant.

Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Kenneth B. Knowles, Col. USAF, Gen. Counsel, Dallas, Bryan M. Caldwell, LTC USAF, Asst. Gen. Counsel, Dallas, Tex., for defendant-appellee.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

We must decide whether the district court properly rejected the appellant's *Bivens* claim based on an alleged violation of his due process rights in termination of employment proceedings. We affirm.

## FACTS

Richard E. Dynes was employed with the Army and Air Force Exchange Service (AAFES), an integral part of the Departments of the Army and the Air Force. AAFES is under the jurisdiction of the Chiefs of Staff of the United States Army and the United States Air Force. AAFES operates in support of Army and Air Force personnel throughout the world, providing necessary merchandise and services not otherwise furnished through appropriated funds.

On January 30, 1980, Dynes received a warning letter regarding his job performance. At the end of the sixty-day warning period, in a March 31, 1980 Performance Evaluation Report, Dynes's supervisor noted his performance as unsatisfactory. Under the applicable Army and Air Force regulations, when an employee's performance during a warning period is unsatisfactory, the employee may be transferred, downgraded, or separated. Paragraph 3–11c, Army Regulations (AR) 60–21/Air Force Regulations (AFR) 147–15. Beachler, the management official passing on Dynes's job performance, processed a separation action for Dynes because of unsatisfactory job performance. On April 30, 1980, Dynes received an Advance Notice of Separation for Unsatisfactory Performance. After consideration of Dynes's response, management issued a final decision to terminate his employment. Dynes, exercising his right under the relevant regulations, appealed the decision and requested an evidentiary hearing. ¶ 3–34, AR 60–21/AFR 147–15.

On September 24 and 25, 1980, at the evidentiary hearing, Dynes was represented by counsel, given a full opportunity to examine the documentary evidence relied upon by management, allowed full cross-examination of all witnesses, presented documentary evidence on his own behalf, called witnesses in his own behalf, and presented argument. On October 24, 1980, R.J. Birkmeyer, the hearing examiner, submitted findings and recommendations to the appellate authority finding that management had produced "... some evidence to support each of [its] allegations." Birkmeyer recommended that the appeal be denied and the termination sustained. This recommendation was approved by Brigadier General Norris W. Overton, Deputy Commander of AAFES, acting as appellate authority.

On November 12, 1980, Dynes sent United States Senator Howell Heflin a letter requesting that the Senator conduct an inquiry into his employment termination hearing. Senator Heflin's office forwarded the letter to AAFES, with a request that the matter be reviewed. AAFES forwarded the inquiry from Senator Heflin to Birkmeyer because, as hearing examiner, he was most familiar with Dynes's appeal. On December 9, 1980, after Birkmeyer reported to him, the AAFES Commander responded to Senator Heflin's inquiry.

On January 8, 1981, after having read a copy of the AAFES Commander's December 9, 1980, letter, Dynes wrote directly to the AAFES Commander. In his letter to the Commander, Dynes pointed out factual errors in the AAFES Commander's December 9, 1980 letter:

1. Promotion of plaintiff to universal salary plan (USP) grade 5, document control assistant position, had occurred in September 1970, rather than in 1972 as stated in the response to Senator Heflin.

2. Plaintiff's submission of a resume of employment history and experience had occurred in 1972 rather than at the time of plaintiff's initial employment with AAFES as stated in the response to Senator Heflin.

3. The recitation of the plaintiff's attempts to obtain reassignment out of the accounting career field was allegedly incomplete.

The district court found that the remainder of Dynes's January 8, 1981 letter was an argumentative restatement of his positions at his termination hearing:

1. He questioned the accuracy of the statement that the plaintiff's job had been abolished in 1972, contending that the job had not been abolished, but rather, had been reestablished in another office as part of the RIF reorganization.

2. He expressed displeasure that a comment in the letter to Senator Heflin regarding a promotion of plaintiff to UA–7 in 1973, did not reflect the fact that the promotion in question had been a two-grade advancement and had required the concurrence of headquarters.

3. He argued over the correct interpretation to be given the contents of the experience resume provided by the plaintiff in 1972.

4. He questioned the designation of a job dealing with the collection of dishonored checks, to which plaintiff was transferred in March, 1975, in a training status, as an accounting technician position.

5. He reargued his position regarding the inconsistency inherent in approving a step salary increase for the plaintiff shortly before issuing an unsatisfactory performance evaluation report on plaintiff.

6. He complained about the failure to favorably act upon plaintiff's supervisor's recommendations as well as the plaintiff's requests for transfer out of the accounting career field.

7. He complained about the issuance of previous warning letters in 1978 and 1979 and the attendant 'cloud' under which the plaintiff was forced to work.

8. He complained of a failure to advise the plaintiff of a procedural error that caused an earlier separation for unsatisfactory performance to be overturned in January, 1980.

9. He complained that, following the plaintiff's reinstatement in January, 1980, another warning period was immediately instituted to be processed and monitored by the same individuals who had been responsible for the previous defective separation action.

On February 3, 1981, AAFES's general counsel, acting for the Commander, declined to respond to Dynes's January 8, 1981, letter because its arguments pertained to this law suit.

We must specifically determine whether the district court's grant of partial summary judgment and dismissal of Dynes's complaint were correct, in light of Dynes's due process claims regarding termination of his employment.

## MOTION FOR SUMMARY JUDGMENT

The district court granted the defendants' motion for partial summary judgment on Dynes's constitutional claim that his right to due process was violated because the defendants conspired to terminate his employment. Based on *Bush v. Lucas,* the district court concluded the defendants were entitled to judgment as a matter of law. *Bush v. Lucas,* 647 F.2d 573 (5th Cir. 1981), aff'd. —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

In reviewing a summary judgment, we apply the same legal standards which control the district court in determining whether summary judgment is appropriate. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1030 (5th Cir.1982); *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence is reviewed in the light most favorable to Dynes, the party opposing the motion for summary judgment. *Sweat v. Miller Brewing Company,* 708 F.2d 655, 656 (11th Cir. 1983); *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026 (5th Cir.1982).

■ *Bush v. Lucas* is dispositive regarding Dynes's due process claim. *Bush* involved a federal employee's action for damages against the director of the George C. Marshall Space Flight Center, a major facility operated by the National Aeronautics and Space Administration (NASA). Bush, an aerospace engineer for NASA, made a number of public statements to the media which were highly critical of the agency. The director of the center demoted Bush for

making the statements on the grounds that they were false, misleading, and adversely affected public confidence in government service. Bush thereafter utilized the administrative appellate process. While his administrative appeal was pending, Bush filed an action against the director of the center seeking tort damages for "retaliatory demotion" in violation of his first amendment rights. Bush, as does Dynes in the present case, cited *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for the proposition that the constitution itself supports a private cause of action for damages against a federal official.

In *Bush,* the Supreme Court stated that there are two situations in which a *Bivens* action may be defeated. The first, applicable here, is where "special factors counselling hesitation in the absence of affirmative action by Congress," are present. In discussing Bush's prayer for nonstatutory damages, the Court noted that a federal courts' statutory jurisdiction to decide federal questions confers power to award damages to the victim of a constitutional violation, although such a remedy is not expressly authorized by Congress. *Bush,* 103 S.Ct. at 2407. However, absent congressional directive, the federal court must determine whether it *should* exercise this power to award such damages, considering "any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* at 2411. Reviewing the comprehensive administrative scheme which provides remedies for federal civil servants who are wrongly demoted or removed, the Court stated:

> The question is not what remedy the court should provide for a wrong that

would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. *Id.* at 2416. The Court concluded that Congress is in a better position to decide whether the public interest would be served by creating a new substantive legal liability. Therefore, the Supreme Court declined to create a new nonstatutory damages remedy.

Dynes attempts to distinguish *Bush v. Lucas* on two grounds. First, he argues that Bush's claim is based on a first amendment violation, while his claim arises from a due process violation. The Supreme Court's analysis in *Bush* renders the violation of a federal right insignificant. In fact, the Court assumed that "a federal right [had] been violated and Congress [had] provided a less than complete remedy for the wrong." *Id.* at 2408. Based on *Bush,* we decline to create a new remedy regardless of which constitutional right has allegedly been violated.

Second, Dynes argues that his claim involves an employer/employee relationship governed by the AAFES regulations, rather than the civil service regulations applicable in *Bush.* This distinction is inconsequential. Because Dynes is a federal employee whose claim arises out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, *Bush v. Lucas* dictates that the regulatory scheme not be supplemented with a new judicial remedy.* Therefore, no mat-

---

* Under the applicable Army and Air Force regulations, a reviewing official is required to issue a warning letter to an employee when the employee is not adequately meeting the requirements in his job description. ¶ 3–11(a)(1), Army Regulations (AR) 60–21/Air Force Regulations (AFR) 147–15. The employee has the right to reply within seven calendar days of receipt of the warning letter. ¶ 3–11(b)(6), AR 60–21/AFR 147–15. If the employee's reply is satisfactory to the supervisor, he may withdraw the warning letter and so advise the employee. *Id.* The regulations provide for a per-

formance review at the end of the warning period; if the authorized official makes a determination to downgrade, transfer, or separate the employee for unsatisfactory performance, advance notice of such adverse action must be issued to the employee no later than forty-five calendar days following the end of the warning period. ¶ 3–11(d), AR 60–21/AFR 147–15. An employee has the right to appeal a final decision of adverse action and to request an evidentiary hearing. ¶ 3–11(e), AR 60–21/AFR 147–15. On appeal, the employee has the right to be represented by counsel or any other individ-

ter how meritorious Dynes's due process claim is, he is not entitled, as a matter of law, to the nonstatutory damages remedy he seeks. The district court correctly granted partial summary judgment regarding Dynes's constitutional claim.

## MOTION TO DISMISS

In the district court's order granting partial summary judgment, the court further ordered that Dynes file a brief within thirty days addressing the propriety of the administrative proceedings. More than sixty days later, the district court granted the defendants' motion to dismiss, pursuant to rule 41(b), for failure to comply with the court's order. The dismissal was without prejudice.

▇ The court's power to dismiss a cause "is an inherent aspect of its authority to enforce its orders and insure prompt disposition of law suits." *Jones v. Graham,* 709 F.2d 1457, 1458 (11th Cir.1983). The standard of review on appeal from the dismissal of a lawsuit is abuse of discretion. *Id.* Counsel for Dynes argues that his failure to file the brief ordered by the district court is the only instance in two years of litigation in this case in which he has not diligently filed requested papers. Counsel argues that, because the district court judge had already made up his mind, "[he] could see no advantage to be gained in filing a brief and at that time [decided to] appeal."

▇ Although this case does not involve a series of violation of court rules or pretrial orders, because the case was dismissed without prejudice, we cannot say that the district court abused its discretion.

AFFIRMED.

ual of his choice, at the employee's expense. ¶ 3–34(h), AF 60–21/AFR 147–15. The appeal may contain affidavits, documentary evidence, and arguments in support of the employee's appeal. ¶ 3–34(a), AF 60–21/AFR 147–15. The entire file of an appeal is then reviewed by a hearing examiner who determines whether or not the adverse action taken is in compliance with the applicable procedural requirements. If the applicable procedures have been complied with, the hearing examiner conducts a hearing under procedures published by the commander, AAFES. The hearing examiner makes findings of fact and writes a recommendation on the appeal to the appellate authority. ¶ 3–34(c), AF 60–21/AFR 147–15. The appellate authority, after having secured legal advice from his staff, reviews the appeal. The appellate authority may approve, disapprove, or amend the recommendation of the hearing examiner or return the case for further hearing, or for corrective action. ¶ 3–39(a), AF 60–21/AFR 147–15. The written determination by the appellate authority is final and not subject to further appeal or review. *Id.*