James N. STEPHENS, Plaintiff,

v.

Terry S. COLEMAN and Isabel P. Dunst, Defendants.

Civ. A. No. 1:87–cv–1785A–HTW.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 4, 1989.

Beverly B. Bates, Atlanta, Ga., for plaintiff.

Sandra R. Ganus, Office of U.S. Atty., Atlanta, Ga., for defendants.

## ORDER OF COURT

### HORACE T. WARD, District Judge.

This matter is before the court on defendants' motion to dismiss, pursuant to Fed. R.Civ.P. 12(b)(2), 12(b)(5) and 12(b)(6) and plaintiff's motion for leave to amend complaint filed on January 24, 1989. Both motions are opposed.

Plaintiff brought this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et seq.; 5 U.S.C. § 2302(b)(2), (6); 5 U.S.C. §§ 3318 and 3320; the First and Fifth Amendments of the United States Constitution and various other statutes and rules. Basically, plaintiff asserts that he was deprived of an appointment as Regional Attorney by defendants Coleman's and Dunst's failure to follow appropriate selection procedures in violation of plaintiff's constitutional rights guaranteeing free speech under the First Amendment and due process and equal protection under the Fifth Amendment.

## STATEMENT OF FACTS

The facts of this case are basically undisputed. Plaintiff was employed by the Department of Health and Human Services ("HHS") as an attorney. In 1985, plaintiff applied for the position of Regional Attorney (now changed to Chief Counsel). Plaintiff was advised that he was not accepted for the position on August 13, 1985 and subsequently filed several grievances contending that the agency and various individuals "failed to follow appropriate HHS and federal regulations, rules and policies" in making the selection. The Office of General Counsel rejected plaintiff's grievances and request for an investigation and hearing.

Subsequent to the decisions on plaintiff's grievances, plaintiff filed suit against the Secretary of HHS on August 26, 1986, alleging arbitrary and capricious action in violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., and violation of his constitutional rights to procedural due process and equal protection (Civil Action File No. 1:86–CV–1875–HTW). The Secretary filed dispositive motions to dismiss the HHS complaint asserting that plaintiff's remedies under the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111, et seq., were exclusive. Plaintiff then filed the instant action seeking substantially the same relief against defendants Coleman and Dunst individually "only in the event relief is determined to be unavailable against defendant in C86–1875A."

Defendants contend that, regardless of plaintiff's entitlement to relief in Civil Action Number 86–CV–1875, plaintiff's constitutional claims against defendants Coleman and Dunst in the present case are barred by the doctrine of *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), which precludes creating a judicial remedy for claims arising out of federal employment relations. Defendants also contend that the court lacks personal jurisdiction over the defendants and that neither defendant was properly served, thereby entitling defendants to dismissal with prejudice pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(5) and 12(b)(6).

## I. PERSONAL JURISDICTION

Defendants contend that this case should be dismissed because this court lacks jurisdiction over their person and state as bases that defendants have not properly been served and that defendants are non-residents and not subject to the personal jurisdiction of this court.

In plaintiff's response to defendant's motion to dismiss, he concedes that service of process was initially ineffective. Plaintiff states in his response that he has taken steps to perfect service under the Georgia Long Arm Statute, O.C.G.A. § 9–10–94 and that defendants' motion contesting service is or will be mooted.

Plaintiff cites 28 U.S.C. § 1391(e) either in an effort to show that this court has personal jurisdiction over defendants or to establish venue. However, this section is

inapplicable to a determination of personal jurisdiction. Unless personal jurisdiction can be obtained over defendants, it serves no purpose to determine whether venue could be established. Moreover, defendants have not challenged venue in this case.

■ Before a federal court may exercise personal jurisdiction over a defendant, there must exist both a constitutionally sufficient relationship between the defendant and the forum, i.e. minimum contacts, and a basis for the defendant's amenability to service of summons. *Omni Capital International Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, ——, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); *DeLong Equipment Company v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847 (11th Cir.1988).

■ The plaintiff has the burden of proof to establish jurisdiction in this court. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 329 (5th Cir.1982) *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). However, at this state in the proceedings when the motion is to be decided on affidavits and other evidentiary materials without a hearing, the plaintiff need only show a *prima facie* case. *DeLong Equipment*, 840 F.2d at 843. The court is obligated to deny the motion if the plaintiff alleges sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction of this court. *Jackam v. Hospital Corporation of America Mideast, Ltd.*, 800 F.2d 1577 (11th Cir.1986). Allegations which are not controverted by defendants' evidence must be accepted as true. *DeLong Equipment*, 840 F.2d at 843; *Morris*, 843 F.2d at 492. Conflicts in the facts are to be resolved in the plaintiff's favor for determining if a *prima facie* case exists. *Morris*, 843 F.2d at 492; *DeLong*, 840 F.2d at 843; *Brown*, 688 F.2d at 332. The court will first address the service of process issue, then the minimum contacts issue.

## A. Service of Process

■ Fed.R.Civ.P. 4(e) prescribes how process can be served on an out-of-state defendant in a federal civil case. Under this rule, if a federal statute containing a service of process provision is applicable to the case, service on an out-of-state defendant is made according to its terms. Fed. R.Civ.P. 4(e). Absent such a provision, service is made under the circumstances and in the manner prescribed by the law of the state in which the district court sits. *DeLong Equipment*, 840 F.2d at 847; Fed.R. Civ.P. 4(e).

As plaintiff has not asserted any statute which allows service of process under the facts alleged in the complaint, service must be pursuant to the Long Arm Statute of the State of Georgia. Service of process is perfected under that statute in the same manner as upon residents of the state. O.C.G.A. §§ 9–10–91 and 9–10–94. Plaintiff apparently alleges that defendants committed a tort. Section 9–10–91 permits the exercise of jurisdiction over a non-resident defendant for commission of a tort if he or she:

(2) commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

. . . . .

O.C.G.A. § 9–10–91(2), (3). Plaintiff merely alleges in response to the motion to dismiss that defendant Dunst visited Georgia to interview him and that defendant Coleman made a telephone call to notify him that he did not receive the position for which he had applied. No further facts or details of activity or conduct are stated. Plaintiff has not shown or even alleged that defendants purposefully did some act with or in the forum, that the legal injury he received arises out of or results from defendants' purposeful activity and that with the existence of these two factors, the exercise of jurisdiction would be reason-

able. *See DeLong Equipment,* 840 F.2d at 849; *Schellenberger v. Tanner,* 138 Ga. App. 399, 404–05, 227 S.E.2d 266 (1976).

As plaintiff has not alleged facts in his complaint or in subsequent pleadings sufficient to make a proper determination, the court is unable to find that service of process met with the statutory requirements. The statute indicates that service of process cannot properly be made until it can be shown that personal jurisdiction may be obtained pursuant to O.C.G.A. § 9–10–91. Accordingly, the court determines that plaintiff has not demonstrated that the first part of the jurisdictional requirement has been satisfied. Conducting an interview and making a telephone call alone are not sufficiently significant to satisfy the terms of the long arm statute and to simultaneously allow service of process.

The record indicates that the individual defendants were personally served on February 12, 1988. Although process may have been personally delivered to the individual defendants, there is no evidence that such process was properly served in light of the above discussion. The court finds that plaintiff has not presented a *prima facie* case that defendants' activities permit the assertion of jurisdiction under the Georgia long arm statute or that service of process was proper and, therefore, has not met his burden.

### B. Minimum Contacts

█ As previously mentioned, the court has been unable to locate facts in the complaint which relate to personal jurisdiction. In paragraph four plaintiff alleges jurisdiction under the First and Fifth Amendment of the Constitution of the United States, 28 U.S.C. § 1331 giving the district court original jurisdiction over all civil actions arising under the laws and Constitution of the United States; and 28 U.S.C. § 1332 under diversity of citizenship. However, these allegations relate only to subject matter jurisdiction and cannot, without more, serve as a basis for asserting jurisdiction over the persons of non-resident defendants.

Defendants specifically argue in their motion to dismiss that jurisdiction is improper because it does not comport with due process. In his response to this argument, plaintiff states that he was notified in Atlanta by a telephone call from defendant Coleman from Washington, D.C. that he would not be selected for the position. He further states that Defendant Dunst came to Atlanta to interview plaintiff and two other candidates for the appointment. The other arguments made by plaintiff relate to contacts by the agency with the forum. Plaintiff further argues that when an agency official commits a tortious act, there is no unfairness to defendants in seeking accountability in a federal court in a state where the vacancy occurred and where the appointment was filled. Based on the foregoing, plaintiff argues that it would not be unfair nor offend traditional notions of fair play to assert personal jurisdiction over defendants in Georgia.

Defendants show by way of affidavit that Ms. Dunst has made only four trips to the State of Georgia. All trips were undertaken exclusively in her official capacity. Only two of such trips had any relationship to the facts of this case. Neither of the those two trips lasted for more than twenty-four (24) hours. Ms. Dunst does not own, use, or possess any real property in the State of Georgia, derive income from goods consumed or disposed of or from services performed in the State of Georgia.

Defendants further show by way of the affidavit of Terry S. Coleman that, except for a one-week vacation in 1983, Mr. Coleman has not travelled to or visited the State of Georgia either on official business or for personal reasons. His contacts with the forum state consist of telephone calls to other government officials in the State in the normal course of conducting official business. Mr. Coleman does not own, use, or possess any real property in the State of Georgia, derive income from goods consumed or disposed of or from services performed in the State of Georgia.

█ In order to assert jurisdiction over non-resident defendants in a diversity action, the requirements of the long arm

statute of the forum state and due process requirements of the constitution must be met. *Southwire Company v. Trans–World Metals and Company, Ltd.,* 735 F.2d 440 (11th Cir.1984). The Supreme Court has repeatedly stated that the constitutional touchstone is whether the defendant purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This court may exercise jurisdiction over a non-resident defendant in accordance with due process only if that defendant has "certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and justice.'" *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), quoting *International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. at 158. In order to satisfy the requirement of contact with the forum state it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183; *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) quoting *International Shoe Co. v. Washington,* 326 U.S. at 319, 66 S.Ct. at 159. It is critical in a due process analysis that defendant's conduct in connection with the forum state is such that he should reasonably anticipate being haled into court there. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183, quoting *Worldwide Volkswagen v. Woodson,* 444 U.S. 286 at 297, 100 S.Ct. 559 at 567, 62 L.Ed.2d 490.

■ Once it is decided that a defendant purposefully established minimum contacts with the forum state, the contacts must be considered in light of "reasonableness" factors to determine whether the assertion of personal jurisdiction would comport with traditional notions of fair play and substantial justice. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. These factors include, among others, the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Id.* at 477, 105 S.Ct. at 2184.

Plaintiff discusses various contacts that defendants had with this state or with plaintiff in this state in their official capacities or that defendants' agency has with this state. Such contacts in and of themselves, cannot serve as a basis for obtaining personal jurisdiction over defendants. *See e.g., DeLong Equipment,* 840 F.2d at 852 (defendants must have committed some act in the forum for which they can be held personally liable). As this suit seeks relief against the defendants personally, rather than against the resources of the United States, plaintiff must prove that this court has personal jurisdiction over the individual defendants without regard to the agency. *Griffith v. Nixon,* 518 F.2d 1195 (2d Cir. 1975), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974).

Plaintiff must assert specific personal jurisdiction, founded on defendants' contacts with the forum state which are related to the cause of action. *See DeLong Equipment Co.,* 840 F.2d at 853. The only contact that plaintiff alleges Ms. Dunst had with this forum is her coming to Georgia to conduct his interview. The record shows that Ms. Dunst made four visits to the forum state, all of which were in her official capacity. There is no indication of her personal activity, tortious or otherwise.

Upon review, the court does not determine that these contacts show that Ms. Dunst purposefully availed herself of the privilege of conducting activities in this forum or that she would reasonably anticipate being haled into court in Georgia. Plaintiff has not given sufficient information relative to Ms. Dunst's activities or contacts as they pertain to plaintiff while on these visits. Therefore, the court determines that plaintiff has not alleged sufficient facts to support a reasonable infer-

ence that Ms. Dunst could be subjected to the jurisdiction of this court.

Even if the court determined that Ms. Dunst had sufficient contacts with this state based on the contacts established, these contacts, must be considered in light of the "reasonableness" factors. The records are likely stored in Washington, and the majority of the witnesses who would testify about the administration of the system in general and as it specifically relates to this case are presumably in Washington. Therefore, the case could be more efficiently handled in that forum.

Additionally, plaintiff has not provided any evidence of the forum state's interest in adjudicating this matter. Such interest appears to be insubstantial in light of the Supreme Court's ruling that the administration of a federal personnel system is of national interest and the design of such system should be left to Congress. Moreover, defendant Dunst would be burdened by having to litigate an action in a forum where she has basically no contacts. An evaluation of the "reasonableness" factors indicate that such assertion would not comport with traditional notions of fair play and substantial justice.

Mr. Coleman's contacts with the forum are practically nonexistent. They consist of telephone calls to the state and a vacation in 1983. The only telephone call that relates to this cause of action was one to plaintiff advising that he had not been selected for the position of Regional Attorney. These actions are insufficient to subject Mr. Coleman to the jurisdiction of this court.

Upon review of the record, the court determines that plaintiff has failed to establish the necessary minimum contacts with the State of Georgia, with respect to the allegations of the complaint, to give this court jurisdiction over defendants. Therefore, this court concludes that based on the record in this case, this action may properly dismissed as to Terry S. Coleman and Isabel P. Dunst for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2).

## II. FAILURE TO STATE A CLAIM

Defendants contend that an application of *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) requires that the complaint be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court should deny a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Generally, the allegations of a complaint are to be liberally construed. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir.1981). However, if it is clear from the complaint that plaintiff could prove no set of facts that would entitle him to relief, the complaint should be dismissed. *Madison v. United States*, 752 F.2d 607 (11th Cir.1985).

### A. Application of *Bush v. Lucas*

█ In *Bush*, as in the present case, the plaintiff was employed within the Civil Service Reform Act (CSRA), which establishes standards and provides authority for the government to take actions necessary to ensure adequate employee performance and conduct. *See Harrison v. Bowen*, 815 F.2d 1505, 1509 (D.C.Cir.1987). The CSRA provides a remedial scheme through which employees may vindicate the substantive rights provided by CSRA. The remedial scheme provides, in relevant part, as follows:

(1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings;

(2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry" (citation omitted); and

(3) for the specified minor actions not so infected, and for all other minor person-

nel actions, review by neither OSC nor the courts. *Carducci v. Regan,* 714 F.2d 171, 175 (D.C. Cir.1983); CSRA, § 1 *et seq.,* 92 Stat. 1111. An "adverse action" under item one above would include removal, suspension for more than 14 days, reduction in pay or grade, and a furlough of 30 days or less, pursuant to 5 U.S.C. § 7512. Plaintiff claims that he was improperly denied a promotion and does not contend that the actions of defendants in this case are included in the definition of "adverse action." Plaintiff does contend, however, that defendants' actions constitute "prohibited personnel practices" as referenced in item two above and defined at 5 U.S.C. § 2302 as including:

(1) discriminat[ion] for or against any employee or applicant for employment—

(B) on the basis of age ...;

(2) solicit[ation] or consider[ation of] any recommendation or statement ... with respect to any individual who ... is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records or the person furnishing it ...;

(6) grant[ing] any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition for the requirements of any position) for the purpose of improving or injuring the prospects of any particular person for employment;

(10) discriminat[ion] for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others;

(11) tak[ing] or fail[ing] to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title ...

5 U.S.C. § 2302(b). Specifically, plaintiff alleges that the defendants, among other things, failed to seek comments from plaintiff's past supervisor, improperly considered criteria outside the selection criteria, failed to give appropriate weight to plaintiff's experience, failed to give plaintiff a veterans preference and as a result improperly denied plaintiff the position of Chief Counsel, Region IV, Atlanta, Georgia. As these allegations are clearly within the above definition of a "prohibited personnel practice," plaintiff's remedy is as set forth in the second provision, that is, he must seek review by the Office of Special Counsel. (Neither party contends that plaintiff's claims are for actions described in the third provision, for which review by neither OSC nor the courts is available.) In this situation, judicial scrutiny is "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry." The record before the court shows that the OSC made sufficient inquiry into plaintiff's claims. Moreover, that is not the basis of plaintiff's complaint.

Plaintiff argues that this limitation on the judiciary should not apply to cases in which relief is denied against the government itself and the individual is relegated to a position of seeking relief against government officials in their individual capacities. Plaintiff relies heavily on Justice Blackmun's statement in his concurring opinion in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), that "this court long has recognized that the Constitution itself supports a private damages action against a federal official." *Fausto,* 108 S.Ct. at 677.

However, the Supreme Court subsequently decided the case of *Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), which further clarifies when money damages may be awarded against government officials in an individual capacity. In *Chilicky* respondents had initially sought relief against petitioners in their official and individual capacities. *Chilicky,* —— U.S. at ——, 108 S.Ct. at 2463. When the case was dismissed based on qualified immunity, respondents appealed, pressing only their claims for money

damages against petitioners in their individual capacities. *Id.*

The *Chilicky* Court noted that *Bivens*[1] actions against federal officers have been permitted but stated that in such cases there were no special factors counselling hesitation in the absence of affirmative action by Congress, no explicit statutory prohibition against the relief sought and no exclusive statutory alternative remedy.

> Special factors counselling hesitation in the absence of affirmative action by Congress has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Schweiker v. Chilicky,* — U.S. at —, 108 S.Ct. at 2468.

In *Bush,* the Supreme Court directed the judiciary to "pay particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Bush,* 462 U.S. at 378, 103 S.Ct. at 2411. The Supreme Court found that the unique nature of the federal personnel system was a special factor which counsels such hesitation and bars *Bivens* actions. *Id.* at 372, 103 S.Ct. at 2408. The court further stated:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step-by-step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.

*Id.* at 388, 103 S.Ct. at 2416–17. The Supreme Court answered this question in the negative. The Court found that the judiciary should not create such new remedies when Congress has constructed a remedial system for redress.

Plaintiff contends that the remedy provided in this case is so limited that it results in the absence of meaningful remedies being provided under CSRA, thereby precluding application of *Bush.* Although plaintiff believes his remedy is inadequate under the system, the Court expressly recognized that "civil service remedies were not as effective as an individual damages remedy and did not fully compensate [a plaintiff] for the harm suffered." *Id.* at 372, 103 S.Ct. at 2408.

The Court stated in *Chilicky* that "we refused—again unanimously—to create a *Bivens* remedy for a . . . violation 'aris[ing] out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States.'" *Chilicky,* — U.S. at —, 108 S.Ct. at 2467, quoting *Bush,* 462 U.S. at 389–90, 103 S.Ct. at 2417. The court discussed at length the remedy sought by respondents and found it to be virtually identical to the one sought in *Bush.* Upon review of the statutory scheme created by Congress, the Court found that the relief sought by respondents was unavailable as a matter of law.

The Court's decision was premised upon the conclusion that Congress was in a better position than the courts to decide whether particular remedies should be available to federal employees with respect to wrongs allegedly suffered in connection with personnel actions. *Bush,* 462 U.S. at 389, 103 S.Ct. at 2417. In essence, the Supreme Court deferred to Congress, pointing out that the policy judgment involved should be an informed one and that Congress was much better equipped than the courts to inform itself about the respective costs and benefits affecting the public interest in an efficient civil service. *Id.* at 388–89, 103 S.Ct. at 2417. *See also McCollum v. Bolger,* 794 F.2d 602, 607 (11th

---

**1.** In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that the victim of a Fourth Amendment violation by federal officers acting under color of their authority may bring suit for money damages against the officers in federal court.

Cir.1986), *cert. denied sub nom. McCollum v. Tisch,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Hallock v. Moses,* 731 F.2d 754, 757 (11th Cir.1984). In this case, Congress has provided the remedy to which it determined an individual would be entitled when there is a prohibited personnel practice.

Plaintiff states, in reliance on *McIntosh v. Weinberger,* 810 F.2d 1411, 1435–36 (8th Cir.1987), that *Bush* implies that there should be no additional *Bivens* type remedy under the Constitution only where there is no meaningful and adequate statutory remedy for constitutional violations. The court notes that the *McIntosh* court found that the defendant did not identify any other remedy for his action that the plaintiff could have invoked. In such a case, Congress apparently has not provided a remedy. In the instant case, however, Congress has provided for review by the OSC when a prohibited personnel practice is alleged. Therefore, plaintiff has not demonstrated that his case would fall within a possible exception created for situations without a remedy. The court further notes that *McIntosh* has been vacated and remanded. *See Turner v. McIntosh,* — U.S. —, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988). Therefore, that case fails to provide adequate support for plaintiff's position.

Plaintiff contends that the remedy provided for prohibited personnel actions under the CSRA is inadequate. Specifically, he argues that since such remedy provided is not as adequate as that available to the plaintiff in *Bush,* that the doctrine of *Bush v. Lucas* does not bar a *Bivens* type remedy. Plaintiff's argument was also made by respondents in *Chilicky* and specifically rejected by the Supreme Court. *Chilicky,* — U.S. at —, 108 S.Ct. at 2469. Additionally, this argument has been consistently rejected by the Eleventh Circuit Court of Appeals. *See Wells v. F.A.A.,* 755 F.2d 804, 810 (11th Cir.1985). *See also McCollum v. Bolger,* 794 F.2d at 607; *Hallock v. Moses,* 731 F.2d at 757.

The Eleventh Circuit has refused to find that a disparity in remedies should result in one federal employee having a civil damages remedy, where another with a more serious claim is barred from such a remedy. "We should never suppose that in providing more effective remedies for some grievances than for others, the Congress intended that those grievants who were left in the second group were really meant to be better off than those in the first." *Wells v. F.A.A.,* 755 F.2d at 810.

Hence, the law in this circuit is clear that plaintiff's *Bivens* type remedy is barred in cases such as this which allege prohibited personnel practices under the CSRA. The court notes that plaintiff has failed to adequately distinguish these cases or present any plausible argument as to why this court should not follow the strong precedent that has been established in this circuit.

The fact that plaintiff has alleged constitutional violations does not take his claims outside the remedial provisions of the CSRA. The Supreme Court recognized that "[c]onstitutional challenges to agency action ... are fully cognizable within [the CSRA]." *Bush v. Lucas,* 462 U.S. at 386, 103 S.Ct. at 2415. Moreover, the analysis in *Bush* applies regardless of the constitutional right alleged to have been violated. *Wells v. F.A.A.,* 755 F.2d at 809; *Dynes v. Army Air Force Exchange Service,* 720 F.2d 1495, 1498 (11th Cir.1983).

Furthermore, the Supreme Court has held that when an individual is employed within the framework of the CSRA, even where Congress has failed to provide any right of judicial review under the CSRA, such individual is not free to pursue "whatever judicial remedies he would have had before enactment of the CSRA." *United States v. Fausto,* 484 U.S. at —, 108 S.Ct. at 673. Based on *Fausto,* even if plaintiff, employed as a CSRA employee, was provided no remedy under CSRA, he would not be entitled to judicial review for the type of personnel related issues set forth herein.

"When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration,

we have not created additional *Bivens* remedies." *Schweiker v. Chilicky,* —— U.S. at ——, 108 S.Ct. at 2468. The CSRA clearly sets forth the remedy to which Congress considered adequate for prohibited personnel practices in the CSRA. This design leaves no doubt that Congress believed it was providing an adequate remedy for prohibited personnel practices. Moreover, *Fausto* and *Schweiker,* in addition to the strong precedent in this Circuit, leave little doubt that courts are precluded from fashioning a judicial remedy based upon a perception that the remedy provided by Congress is inadequate.

In the instant case, plaintiff's claims arise "out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," therefore, this court should not supplement that "regulatory scheme" with a further, judicially-created damages remedy. *See Bush v. Lucas,* 462 U.S. at 368, 103 S.Ct. at 2406; *McCollum v. Bolger,* 794 F.2d at 607, *Wells v. F.A.A.,* 755 F.2d at 809–10; *Hallock v. Moses,* 731 F.2d at 757. The recent Supreme Court cases of *Fausto* and *Chilicky* clearly demonstrate that Congress' decision not to provide a mechanism by which employees such as plaintiff may obtain judicial review of agency employment decisions is not an uninformative consequence of the limited scope of the statute, but rather a manifestation of a considered congressional judgment that they should not be subject to such review. *United States v. Fausto,* 484 U.S. at ——, 108 S.Ct. at 673–74.

In view of the foregoing, the court concludes that plaintiff may not obtain *Bivens* relief against federal officials in their individual capacities in this case as Congress has provided comprehensive procedural and substantive provisions which give meaningful remedies against the United States by way of the CSRA. Such relief is unavailable as a matter of law.[2] Therefore, plaintiff can prove no set of facts that would entitle him to relief. Accordingly, the court should grant defendants' motion to dismiss. *Madison,* 752 F.2d at 607.

For the reasons set forth above, the court concludes that this action should be DISMISSED for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## B. Veteran's Preference

■ Plaintiff argues that he has the "right to vindicate the statutory violation of being deprived a veterans preference to the appointment." However, as defendants correctly state, employees seeking a different position within the agency are not entitled to a veterans' preference when the position sought would constitute an internal agency promotion.

When the Veterans' Preference Act was passed, it was explained to Congress that it provided a preference both in *appointment* to and *retention* in Federal positions. *See Hilton v. Sullivan,* 334 U.S. 323, 338 n. 14, 68 S.Ct. 1020, [1027 n. 14] 92 L.Ed. 1416 (1948). With the sole exceptions of additional credits for military service provided examinees by Section 4 of the Act, 5 U.S.C. § 3363, neither the Act nor the CSC regulations promulgated thereunder accord veterans preferential treatment in promotions. *Crowley v. United States,* 527 F.2d 1176, 1183 (Ct.Cl.1975). A veteran is entitled to preference over non-veterans only in connection with an initial appointment to the federal service or in connection with a reduction-in-force among personnel in the same competitive level. *Qualls v. United States,* 678 F.2d 190, 196–97 (Ct.Cl.1982). As neither situation existed in this case, plaintiff was not entitled to a veterans' preference.

The court is aware that various agencies have designed employment plans that consider a veterans' preference in promotions.

---

2. The conclusion reached by this court is further supported by the Supreme Court's decision to vacate and remand for further consideration in light of *Schweiker* another case heavily relied upon by plaintiff in his response to the defendants' motion to dismiss, *Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986), *vacated and remanded sub nom. Cooper v. Kotarksi,* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 897 (U.S.1988).

**1582**

*See e.g., Rios v. Dillman,* 499 F.2d 329 (5th Cir.1974). Although such plans have been found to be constitutional as applied to non-veterans, the cases do not support plaintiff's position that he is entitled to such a preference, absent a personnel plan which provides for such a preference in promotions. Therefore, such cases are not applicable to the instant case, and the Veterans' Preference Act, in and of itself, does not apply to promotions.

## III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

 Plaintiff moves to amend the complaint to seek mandamus relief against the individual defendants under 28 U.S.C. 1361 and to seek injunctive relief under the court's common law equitable jurisdiction. Plaintiff states that this relief is requested in the event this court accepts the position urged by defendants as set forth in *United States v. Fausto* and *Schweiker v. Chilicky* and denies similar monetary and equitable relief in Civil Action 1:86–CV–1875–HTW. Plaintiff argues that this amendment would not prejudice the defendants, would not delay the case and should be granted under the liberal requirements of Fed.R.Civ.P. 15.

This action has been pending before this court since August 10, 1987. On October 10, 1987, defendants filed an motion to dismiss and filed a supplemental memorandum to that motion on August 25, 1988. The court determines that an amendment to the complaint at this time would effect an undue delay in this case. The court further determines that for the reasons set forth above under "Application of *Bush v. Lucas*" plaintiff is not entitled to judicial relief for the claims set forth herein, whether such relief be monetary or injunctive. Hence, amendment to the complaint would be futile. Justice does not so require that a complaint be amended under these circumstances. Therefore, plaintiff's motion for leave to amend the complaint is DENIED.

In summary, plaintiff's motion for leave to amend the complaint is DENIED, and defendant's motion to dismiss is GRANTED. It is hereby ORDERED that this case is DISMISSED with prejudice.

SO ORDERED.