[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13962
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cv-00477-MSS-CPT

VICKIE OWENS-BENNIEFIELD,

Plaintiff-Appellant,

versus

BSI FINANCIAL SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 31, 2020)

Before MARTIN, ROSENBAUM and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Vickie Owens-Benniefield ("Owens") appeals *pro se* the district court's order dismissing her initial and amended complaints alleging claims under the Fair Debt Collection Practices Act ("FDCPA"), the Florida Consumer Collection Practices Act ("FCCPA"), the Florida Mortgage Brokerage and Lending Laws ("MBBL"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and negligence. Initially, Owens argues that the district court erred by concluding that the mailing of an Internal Revenue Service ("IRS") form 1099-A was not an attempt to collect a debt within the meaning of the FDCPA. Next, Owens argues that the district court erred in dismissing her FDCPA claim as time-barred when it found that she filed her complaint at least one day after the statute of limitations expired. She also argues that the district court erred in finding that BSI Financial Services, Inc. ("BSI") could not be liable for damages under the Florida MBLL because BSI was not involved in the original loan transaction. Finally, Owens argues that the district court abused its discretion in declining to exercise supplemental jurisdiction over her remaining state claims after dismissing her federal claims with prejudice.

I.

We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting the allegations in the complaint as true while construing them in the light most favorable to the non-movant. *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238,

2

1240 (11th Cir. 2012). We also review *de novo* the interpretation of a statute. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). "While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (internal citations omitted).

To survive dismissal, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). To be considered plausible, the allegations in the complaint must raise the right to relief beyond a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Stating a claim upon which relief may be granted "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" be enough to survive a Rule 12(b)(6) motion to dismiss. *Id.*

A plaintiff states a plausible claim under the FDCPA when she alleges that: (1) the defendant is a debt collector; (2) the defendant engaged in an act or omission prohibited by the FDCPA; and (3) the challenged conduct is related to debt collection. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216–17 (11th Cir. 2012). We apply the least sophisticated consumer standard to

3

determine if a communication violates the FDCPA. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010).

When determining whether a communication is "in connection with the collection of any debt," we look at the language of the communication in question, specifically to statements that demand payment or note that additional fees will be assessed if payment is not received. *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302–03 (11th Cir. 2014). In *Reese*, in determining that a communication was an attempt to collect a debt, we pointed specifically to the statements in the letter demanding full and immediate payment; threatening that unless the debtors paid, attorneys' fees would be added; and stating that the law firm was attempting to collect a debt and was acting as a debt collector. 678 F.3d at 1217. In *Caceres*, we held that a communication was made in connection with the collection of a debt when it stated that it was "for the purpose of collecting a debt;" it referred in two additional paragraphs to "collection efforts;" it stated that collection efforts would continue and that additional attorneys' fees and costs would accrue; it stated the amount of the debt and indicated that it must be paid in certified funds; and it gave the name of the creditor. 755 F.3d at 1303. In *Bourff*, we held that a notice sent by a law firm was a debt collection activity when it stated that the sender had been hired to "collect the loan" and advised the recipient to contact the sender to "find out the

total current amount needed to either bring your loan current or to pay off your loan in full."  674 F.3d at 1241.

We conclude from the record here that the district court did not err when it found that the 1099-A form BSI sent to Owens was not a communication in connection with debt collection.  The 1099-A form did not demand payment, state that it was an attempt to collect a debt, or state to whom or how to make a payment on the debt.  *Cf. Caceres*, 755 F.3d at 1303; *Reese*, 678 F.3d at 1217; *Bourff*, 674 F.3d at 1241.  Further, the 1099-A form noted that it was important tax information and clarified that *if* Owens was required to file a return and *if* taxable income resulted from the transaction, then a penalty *may* be imposed.  For these reasons, we conclude that the district court properly found that the 1099-A form was not a communication in connection with debt collection and properly dismissed Owens's FDCPA claims to the extent that they relied on the 1099-A form.  Accordingly, we affirm as to this issue.

## II.

A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred.  *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (internal quotation marks omitted).  Because a statute of limitations bar is an affirmative defense, a

5

plaintiff is not required to negate the affirmative defense in her complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

There is a one-year statute of limitations from the date of the violation to bring an FDCPA claim. 15 U.S.C. § 1692k(d). In *Maloy v. Phillips*, we held that the statute of limitations on an FDCPA claim based on a written communication begins to run the date the communication is mailed. 64 F.3d 607, 608 (11th Cir. 1995). We also held that, based on the method of time calculation provided in Fed. R. Civ. P. 6(a), the date of mailing should be excluded from the calculation of the limitations period. *Id.*

We have applied a presumption of three days for receipt by mail when the date of receipt is in dispute in the context of Title VII cases where a plaintiff must file a suit within 90 days of receiving an Equal Employment Opportunity Commission's right-to-sue letter. *See Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999) (holding that a three-day period after the date of issuance of a right-to-sue letter provided a clear rule enabling parties to be aware of when they must act or forfeit their right to sue). However, we have never held that, when the date of *mailing* is in dispute and a plaintiff alleges receipt of a letter on a certain date, a court could presume a mailing date based on the date of receipt and the parties' addresses.

A debt collector is required to provide a consumer with certain information "in the *initial* communication" about a debt or within five days of the initial communication. 15 U.S.C. § 1692g(a) (emphasis added). The required information includes the amount of the debt, "the name of the creditor to whom the debt is owed," and other information about the debtor's right to dispute the validity of the debt and the consequences of not doing so. *Id*. § 1692g(a)(1)-(5). A consumer may notify the debt collector in writing that she disputes the debt within 30 days of receiving the initial communication. *Id.* § 1692g(b).

Under Florida law, an action to enforce a claim of a deficiency related to a note secured by a mortgage against a residential property that is a one-family to four-family dwelling unit has a limitations period of one year. Fla. Stat. § 95.11(5)(h). The limitations period begins running the day after the certificate is issued by the clerk of court or the day after the mortgagee accepts a deed in lieu of foreclosure. *Id.* Initially, to the extent that Owens relies on Fla. Stat. § 95.11(5)(h) to argue that her complaint was timely filed based on her reliance on the 1099-A form, that argument is meritless because the 1099-A form was not a communication in connection with debt collection. Further, because an FDCPA claim has its own statute of limitations, any attempt by Owens to assert an affirmative cause of action under the statute of limitations is futile. Therefore, the district court's dismissal of Count Four of Owens's initial complaint was proper.

However, we conclude that the district court's statute of limitations analysis was flawed because it failed to consider whether it was apparent from the face of Owens's complaint that her FDCPA claim was time-barred. Owens's amended complaint alleged only that the February mortgage statement was dated February 20, 2017, and, in her response to BSI's second motion to dismiss, she asserted that she received it on February 28, 2017. The district court did not rely on any legal authority supporting the application of a three-day mailing rule (or any similar rule) when it presumed that, based on Owens's allegation that she received the February mortgage statement on February 28, 2017, the latest the statement could have been mailed was February 26, 2017. Further, Owens was not required to negate the affirmative defense that her FDCPA claim as to the mortgage statement was time-barred. *See La Grasta*, 358 F.3d at 845. Therefore, the district court erred in dismissing Owens's FDCPA claims as untimely when her complaint did not allege a date of mailing of the February mortgage statement, and it was not apparent from the face of her complaint whether her claim was time-barred.

Next, as to Owens's claim under 15 U.S.C. § 1692g, while the district court did not explicitly address whether Owens stated a viable claim under this portion of the statute, Owens alleged that BSI violated the statute when she disputed the debt within 30 days. Nevertheless, Owens did not state a viable FDCPA claim under § 1692g because she failed to allege that her dispute was in response to BSI's *initial*

8

communication.  Owens alleged that she filed her complaint with the Office of the

Attorney General in May 2016 in response to nearly three years of collection

attempts by BSI, and Owens asserted that she emailed BSI's president to dispute the

alleged debt seven months after that complaint.  Therefore, Owens did not plausibly

allege that BSI violated § 1692g of the FDCPA because her complaint alleged

multiple years of debt collection attempts by BSI that occurred before she allegedly

disputed the debt.

For the reasons discussed above, we conclude that the district court erred by

dismissing Owens's complaint as untimely as to the February mortgage statement.

Accordingly, we vacate and remand as to this issue.

III.

We have recognized that "our authority to interpret statutory language is

constrained by the plain meaning of the statutory language in the context of the entire

statute, as assisted by the canons of statutory construction." *Edison v. Douberly*, 604

F.3d 1307, 1310 (11th Cir. 2010).  "[W]e do not look at one word or term in isolation

but rather look to the entire statute and its context." *Id.*

Chapter 494 of the MBLL is titled "Loan Originators and Mortgage Brokers."

Fla. Stat. § 494.  It states that:

> [i]f a mortgage loan transaction is made in violation of any provision of
> this chapter, the person *making the transaction* and every licensee,
> director, or officer who participated in *making the transaction* are

jointly and severally liable to every party to the transaction in an action for damages incurred by the party or parties.

*Id.* § 494.0019(1) (emphasis added).  The provision further states that:

[a] person is not liable under this section upon a showing that such person's licensees, officers, and directors who participated in making the mortgage loan transaction, if any, acted in good faith and without knowledge and, with the exercise of due diligence, could not have known of the act committed in violation of this chapter.

*Id.* § 494.0019(2).  The MBLL defines "[m]aking a mortgage loan" as "closing a

mortgage loan in a person's name, advancing funds, offering to advance funds, or

making a commitment to advance funds to an applicant for a mortgage loan."  *Id.* §

494.001(21).  The statute also states, in part, that it is unlawful for any person:

[i]n any practice or transaction or course of business relating to the sale, purchase, negotiation, promotion, advertisement, or hypothecation of mortgage loan transactions, directly or indirectly:
    (a) To knowingly or willingly employ any device, scheme, or artifice to defraud;
    (b) To engage in any transaction, practice, or course of business which operates as a fraud upon any person in connection with the purchase or sale of any mortgage loan;
    (c) To obtain property by fraud, willful misrepresentation of a future act, or false promise.

*Id.* § 494.0025(4).

The statute defines a loan originator as:

an individual who, directly or indirectly, solicits or offers to solicit a mortgage loan, accepts or offers to accept an application for a mortgage loan, negotiates or offers to negotiate the terms or conditions of a new or existing mortgage loan on behalf of a borrower or lender, or negotiates or offers to negotiate the sale of an existing mortgage loan to a noninstitutional investor for compensation or gain.

10

*Id.* § 494.001(18). The statute defines a mortgage broker as "a person conducting loan originator activities through one or more licensed loan originators employed by the mortgage broker or as independent contractors to the mortgage broker." *Id.* § 494.001(23).

We conclude that the district court properly dismissed Owens's claim under the MBLL because the plain language of the statute shows that she could not state a claim upon which relief could be granted. First, the chapter imposes liability on a person who *makes* a mortgage loan transaction. *Id.* § 494.0019(1). Owens's complaint alleged that BSI did not begin attempting to collect a debt related to her mortgage until years after her mortgage was made in January 2008. Not only does Owens's complaint not allege a violation in the making of her mortgage, she expressly stated, in her complaint and in her response to BSI's first motion to dismiss, that she did not have any business relationship with BSI and that BSI was not her lender. Further, when considering the language in the context of the entire statute, chapter 494 is titled "Loan Originators and Mortgage Brokers," and the definition of both of those terms, as provided within the statute, encompasses only loan origination—the making of mortgage loan transactions. Fla. Stat. § 494.001(18), (23). Therefore, the district court did not err in finding that under the chapter a viable action could be alleged against a loan originator only.

11

For these reasons, we conclude that the district court did not err when it dismissed Owens's claim under the Florida MBLL for failing to state a claim upon which relief could be granted after finding that she did not, and could not, plead that BSI made her mortgage loan.  Accordingly, we affirm as to this issue.

IV.

The district courts have original jurisdiction of all civil actions arising under the Constitution or laws of the United States and have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction."    28 U.S.C. §§ 1331, 1367(a).    A district court may decline supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) (quoting 28 U.S.C. § 1367(c)(1)-(4)).

We have encouraged district courts to dismiss any remaining state-law claims when it has dismissed the federal-law claims prior to trial.  *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).  The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).  A dismissal without

12

prejudice generally does not constitute an abuse of discretion because the affected party may simply refile. *See Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1499 (11th Cir. 1983).

We conclude from the record here that the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over the remaining state-law claims when it dismissed Owens's federal law claims with prejudice. First, the district court dismissed the remaining state-law claims without prejudice, allowing Owens to refile in state court—which she did. The refiling is an indication that the district court did not abuse its discretion. *See* 28 U.S.C. § 1367; *Dynes*, 720 F.2d at 1499. Further, the district court's dismissal was consistent with our precedent encouraging the dismissal of remaining state-law claims when the federal-law claims are dismissed before trial. *See Raney*, 370 F.3d at 1089. Finally, the district court dismissed the state-law claims in part because the interpretation of those claims was best resolved by the Florida state courts, and the record supports that notion. *See Shotz*, 344 F.3d at 1185. Accordingly, we affirm as to this issue.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.